El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
Tenemos ocasión de resolver si es eficaz en derecho, bajo el principio constitucional de sistema judicial unificado, la presentación inicial de un recurso de certiorari en la Secretaría de una sede del Tribunal de Primera Instancia que no es la sede recurrida de dicho tribunal. También, si es válida una cláusula contractual mediante la cual un em *426 pleado exento acuerda con su patrono limitar su jornada de trabajo. ¿Tiene disponible ese empleado una causa de acción en daños y peijuicios por habérsele requerido trabajar en exceso de la jornada de trabajo limitada por su contrato de empleo? Veamos los hechos que originan el presente recurso.
I
El Sr. Juan Luis Freire Ayala (señor Freire Ayala) comenzó a trabajar en octubre de 1999 para Vista Rent to Own, Inc., h/n/c Rent a Center (Rent a Center), como “Junior Assistant Manager”, devengando un salario de $19,500 anuales, equivalentes a $375 semanales. En ese entonces, el señor Freire Ayala contaba con cuarenta y tres años de edad.
El señor Freire Ayala comenzó en el empleo laborando en el Departamento de Ventas de la sucursal de Rent a Center en Carolina. Posteriormente, fue trasladado al mismo departamento en la sucursal de la empresa en Río Piedras. Finalmente, fue trasladado a la sucursal de la compañía en Carolina, esta vez al Departamento de Crédito. El señor Freire Ayala fungió como supervisor de dos de las cinco rutas en que estaba dividido el Departamento de Crédito. Tenía a su cargo la supervisión de un empleado por ruta. Eventualmente, fue designado supervisor de las cinco rutas antes mencionadas. Previo a su despido, el señor Freire Ayala fue amonestado por su patrono como consecuencia de la alegada reducción en ventas que experimentaron dos de las cinco rutas supervisadas por él. En septiembre de 2001 Rent a Center prescindió de sus servicios aduciendo la misma razón.
El 17 de enero de 2003 el señor Freire Ayala presentó ante la Sala Superior de la sede de San Juan del Tribunal de Primera Instancia una demanda contra Rent a Center, reclamando discrimen por razón de edad, horas extras y *427 periodos de tomar alimentos trabajados.(1) Alegó que la aducida reducción en ventas fue sólo un pretexto del patrono para encubrir la verdadera razón del despido, su edad. Argüyó, que al ser despedido fue sustituido por un empleado más joven y que la conducta discriminatoria del patrono constituía una violación a la Ley contra el Discrimen en el Empleo de Puerto Rico.(2) Sostuvo que Rent a Center violó la Ley de Horas y Días de Trabajo de Puerto Rico,(3) al no compensarle las horas extras que trabajó, en exceso de cuarenta a la semana, ni los periodos de tomar alimentos trabajados durante su tiempo de servicio con la empresa. Reclamó una compensación salarial y daños ascendentes a $353,000.
Oportunamente, Rent a Center contestó la demanda. Alegó que la causa de acción de discrimen en el empleo por razón de edad estaba prescrita. Además, argüyó que el despido del señor Freire Ayala estuvo justificado por un pobre y negligente desempeño que causó la reducción en ventas y pérdidas económicas que se experimentó en la tienda bajo su supervisón. Sostuvo que en el despido del señor Freire Ayala no medió intención ni ánimo discriminatorio, y que, en la alternativa, de entenderse que el despido fue injustificado, el único remedio disponible al señor Freire Ayala era la mesada dispuesta en la Ley de Despido Injustificado.(4) Finalmente, alegó que el señor Freire Ayala no tenía derecho a reclamar compensación por horas extras ni por periodos de tomar alimentos trabajados, por ser un empleado exento bajo la legislación y reglamentación de horas y salarios vigente en nuestra jurisdicción.
Así las cosas, el 12 de septiembre de 2003 Rent a Center *428 presentó una moción de sentencia sumaria.(5) Sostuvo que de las declaraciones del señor Freire Ayala en la deposición que le fuera tomada durante el proceso de descubrimiento de prueba, en unión a las alegaciones de la demanda, se desprendía que éste se desempeñó como empleado gerencial exento durante su tiempo de servicio con la compañía. Por otro lado, argüyó que la acción de discrimen en el empleo por razón de edad estaba prescrita, ya que fue entablada transcurrido más de un (1) año del despido del demandante. Solicitó del foro primario que desestimara sumariamente las reclamaciones de horas extras, periodos de tomar alimentos y discrimen en el empleo.
El señor Freire Ayala se opuso a la solicitud de sentencia sumaria presentada por Rent a Center.(6) Sostuvo que era improcedente el planteamiento de prescripción de la causa de acción de discrimen en el empleo, en vista de que el 10 de septiembre de 2002, dentro del término prescriptivo de dicha causa de acción, había cursado a Rent a Center una carta constitutiva de una reclamación extrajudicial.(7) Argüyó que su misiva cumplía con los requisitos establecidos por la jurisprudencia de este Tribunal para interrumpir la prescripción. En torno a las reclamaciones de horas extras y periodos de tomar alimentos trabajados, aceptó que no había controversia alguna sobre el hecho de que sus funciones como “Junior Assistant Manager” eran de índole gerencial.(8) No obstante, alegó que en conformidad con el contrato de trabajo habido entre las partes, dichas funciones gerenciales estaban circunscritas a una jornada de trabajo de cuarenta y seis horas semanales, por lo que todas las horas que trabajó en exceso de la jornada de trabajo semanal pactada eran extras y *429 compensables.(9) Puntualizó que sus argumentos y los documentos que acompañaron su escrito creaban controversias de hechos materiales y esenciales que impedían la disposición del caso por la vía sumaria.
Luego de varios incidentes procesales, el 20 de enero de 2004 la Sala Superior de la sede de San Juan del Tribunal de Primera Instancia, dictó una resolución sumaria parcial.(10) Mediante ésta, el foro primario desestimó con perjuicio la reclamación de horas extras y periodos de to-mar alimentos trabajados y declaró “no ha lugar” el planteamiento de prescripción de la causa de acción de discrimen en el empleo. Determinó que durante el tiempo de servicio del señor Freire Ayala en Rent a Center, éste fue un “ejecutivo” exento, según dicho término ha sido definido por el Reglamento Núm. 13 promulgado por la extinta Junta de Salario Mínimo de Puerto Rico.(11) Resolvió que al ser un “ejecutivo” exento, no le aplicaban las disposiciones de la Ley Núm. 379, supra; por consiguiente, no tenía derecho a paga por horas extras ni derecho al disfrute del período de tomar alimentos. Concluyó que el hecho de que el patrono y el señor Freire Ayala suscribieran un contrato que fijaba las horas de trabajo semanales y el salario por ser devengado bajo dicha jornada de trabajo, no derrotaba el hecho de que éste era un empleado exento carente de derecho a recibir paga por horas extras trabajadas. Copia de dicha resolución fue notificada y archivada en autos el 26 de enero de 2004.(12)
Inconforme, el 25 de febrero de 2004, día número 30 a partir del archivo en autos de copia de la referida resolu *430 ción, el señor Freire Ayala presentó un recurso de certiorari en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia, ciudad en la que ubica la oficina de su representante legal.(13) Al día siguiente, 26 de febrero de 2004, el señor Freire Ayala notificó el original del escrito y sus copias reglamentarias a la Secretaría del Tribunal de Apelaciones. Es decir, notificó al Tribunal de Apelaciones el original del recurso y sus copias reglamentarias el día 31, contados a partir del archivo en autos de copia de la resolución del foro primario.(14)
En su recurso de certiorari, el señor Freire Ayala alegó que el Tribunal de Primera Instancia erró al desestimar sumariamente la reclamación de salarios. Sostuvo que aunque había admitido en una deposición sus “funciones gerenciales”, su reclamación salarial trascendía la aplicabilidad del Reglamento Núm. 13, supra, porque ésta tenía que evaluarse a la luz de las disposiciones generales de los contratos que establece el Código Civil de Puerto Rico. Así, afirmó que no estaba en controversia ni la posición ni las funciones del cargo que ocupó en Rent a Center, sino el derecho que tenía a recibir paga por las horas que trabajó en exceso de la jornada máxima semanal de cuarenta y seis horas que pactó con el patrono. Argüyó que tenía un derecho constitucional, legal y contractual a compensación por dichas horas.
Por su parte, Rent a Center presentó ante el Tribunal de Apelaciones una moción de desestimación alegando que dicho tribunal carecía de jurisdicción para acoger el recurso de certiorari. Sostuvo que el señor Freire Ayala presentó el recurso cuando ya estuvo vencido el término de cumplimiento estricto de 30 días, según dispuesto por nuestro ordenamiento procesal civil para solicitar la revisión de re *431 soluciones del Tribunal de Primera Instancia. Argüyó que la presentación tardía e inexcusada por un (1) día, con circunstancias especiales en la propia petición de certiorari, privaba de jurisdicción al Tribunal de Apelaciones. Rent a Center pasó por alto en su moción la presentación inicial del recurso que el señor Freire Ayala hizo en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia.
El 30 de abril de 2004, el foro intermedio apelativo declaró “no ha lugar” la referida moción de desestimación y revocó el dictamen del Tribunal de Primera Instancia.(15) Resolvió el asunto de su jurisdicción razonando que a pesar de que el recurso de certiorari se había presentado el día 31, en interés de la justicia debía atender los méritos del recurso, pues “la radicación de un día en demasía, no ha[bía] ocasionado perjuicio indebido a ninguna de las partes”. Apéndice, pág. 31. Concluyó que la evaluación independiente de los documentos que obraban en su expediente y los escritos de las partes revelaba que el mecanismo de sentencia sumaria no constituía el medio idóneo para resolver la controversia. Determinó que de la deposición tomada al señor Freire Ayala surgía evidencia contradictoria en cuanto a la naturaleza del puesto que éste ocupaba. Puntualizó que el señor Freire Ayala realizaba algunas gestiones propias de un “ejecutivo” exento, pero otras eran las propias de un empleado no exento. Concluyó que no se desprendía de la referida deposición el alcance exacto de la discreción que tenía para tomar decisiones. Por último, determinó que el contrato de trabajo suscrito por las partes, que especificaba el puesto, salario y jornada de trabajo, era ambiguo e incapaz de revelar la intención de éstas al contratar. Resolvió que al señor Freire Ayala le asistía el derecho a tener su día en corte y presentar evidencia en una vista plenaria en apoyo de su posición.
*432 Denegada una moción de reconsideración, Rent a Center acudió ante nos, mediante un recurso de certiorari, señalando los errores siguientes:
PRIMER ERROR: Erró el Honorable Tribunal de Apelaciones al expedir el auto de certiorari y declarar No Ha Lugar la “Moción Solicitando Desestimación del Recurso de Certiorari”, presentada por la parte demandada-peticionaria, cuando es evidente que el Honorable Tribunal carecía de jurisdicción para atender el recurso presentado, pues el mismo se presentó fuera del término de cumplimiento estricto dispuesto por ley sin que se hubiese alegado ni demostrado justa causa para ello.
SEGUNDO ERROR: Erró el Honorable Tribunal de Apelaciones al revocar la Sentencia Parcial dictada por el Tribunal de Primera Instancia, Sala de San Juan, bajo la consideración de que el mecanismo de Sentencia Sumaria utilizado por el Tribunal de Primera Instancia no constituía el medio idóneo para resolver la controversia ante sí.
TERCER ERROR: Erró el Honorable Tribunal de Apelaciones al revocar la Sentencia Parcial dictada por el Tribunal de Primera Instancia, Sala de San Juan, y concluir que el contrato de empleo suscrito entre las partes era por demás ambiguo y que no se desprendía ni lejanamente la intención de las partes al suscribir el contrato. Petición de certiorari, pág. 5.
Contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de resolver.
II
En primer lugar, nos corresponde resolver si actuó correctamente el Tribunal de Apelaciones al asumir jurisdicción sobre el recurso de certiorari presentado por el señor Freire Ayala. Para ello, debemos primero contestar la interrogante siguiente: ¿tiene eficacia jurídica la presentación de un recurso de certiorari el último día hábil del término para hacerlo en una Secretaría de una sede del Tribunal de Primera Instancia distinta a la expresamente facultada a recibirlo, de acuerdo con lo dispuesto por las Reglas de Procedimiento Civil y el Reglamento del Tribunal de Apelaciones? Sí la tiene. Veamos.
*433 A. Principio constitucional de jurisdicción judicial unificada
Reiteradamente hemos resuelto que los tribunales deben ser celosos guardianes de su jurisdicción. Las cuestiones de jurisdicción, por ser privilegiadas, deben ser resueltas con preferencia. De carecer de jurisdicción, lo único que puede hacer un tribunal es así declararlo y desestimar el caso.(16)
Por otro lado, el Art. V, Sec. 2 de la Constitución del Estado Libre Asociado de Puerto Rico dispone lo siguiente:
Los tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdiccin, funcionamiento y administración. La Asamblea Legislativa, en cuanto no resulte incompatible con esta Constitución, podrá crear y suprimir tribunales, con excepción del Tribunal Supremo, y determinar su competencia y organización. (Enfasis suplido.)(17)
En torno a dicha sección, el informe de la Comisión de la Rama Judicial de la Convención Constituyente expresó lo siguiente:
Esta sección establece la completa unificación de los tribunales de Puerto Rico. La unificación de los tribunales produce, entre otros efectos, la eliminación de problemas técnicos de jurisdicción. El poder legislativo queda, no obstante, facultado para determinar la competencia de los tribunales y para disponer que de acudir un litigante a un tribunal distinto al indicado por las leyes sobre competencia, la parte contraria puede solicitar y obtener el traslado ele la causa, o el tribunal motu proprio puede asá disponerlo. ...
Este sistema judicial integrado que recomendamos eliminará en los litigios las cuestiones técnicas de jurisdicción. Dentro del sistema que hasta ahora ha prevalecido en Puerto Rico a menudo se derrotaban los fines de la justicia y se perjudicaban irremediablemente los derechos de litigantes por haber és *434 tos acudido a tribunales que, según dicho sistema carecían, por razones sumamente técnicas, de jurisdicción para conocer en su causa. Frecuentemente se descubría el error técnico cuando ya el litigante haba incurrido en gastos y pérdida de tiempo. El establecimiento de este sistema judicial unificado que se recomienda eliminará de manera absoluta todas estas deficiencias. Por otro lado, se reserva al Poder Legislativo la facultad de disponer por ley sobre la competencia de los tribunales incluyendo el lugar donde deben ventilarse los litigios. Un error por razón de competencia podrá siempre ser subsanado a petición de las partes o por disposición del tribunal sin que se perjudiquen fatalmente los derechos de los litigantes.
También se reserva al Poder Legislativo la facultad de crear nuevos tribunales o de abolir los existentes con excepción del Tribunal Supremo. (Énfasis suplido.)(18)
De otra parte, el alcance del sistema judicial unificado, según lo explicara el Presidente de dicha Convención, Dr. Antonio Fernós Isern, es el siguiente:
[l]a única cuestión concreta es que en todo sistema de justicia integral existe una sola corte. Si el sistema está integrado, tiene competencia y tiene jurisdicción dondequiera que se radique sin perjuicio de que se le conceda por ley el derecho a traslado si la parte lo pide. No sera cuestión de perder los derechos de apelación, los derechos obtenidos. (Énfasis suplido.)(19)
Asimismo, el Lie. José Trías Monge,(20) al analizar el Art. V de la Constitución del Estado Libre Asociado de Puerto Rico y su implementación bajo la Ley de la Judicatura de 1952, expresó lo siguiente:
El artículo V de la Constitución de Puerto Rico consagró, como hemos señalado, el principio de la unificación de los tribunales. La Asamblea Legislativa retuvo el poder de crear *435 nuevas cortes, pem su totalidad constituiría necesariamente un solo conjunto. (Enfasis suplido.)(21)
El licenciado Trías Monge añadió que
... nuestro actual artículo V no deja lugar a dudas que se está creando un sistema unificado, lo que obviamente equivale al establecimiento del tribunal único. Faltó tan sólo bautizarlo, lo cual se hizo en la Ley de la Judicatura. Aun bajo la Constitución actual, sin embargo, resulta claro que cualquier tribunal que se establezca forma parte del sistema unificado a todos los fines que la Constitución dispone. (Enfasis suplido.)(22)
También manifestó lo siguiente:
Un objetivo central de esta ley [de la Judicatura de 1952] era eliminar el oscuro concepto de “jurisdicción”, causa de que se frustrase en muchos casos, por la fijación de rígidas fronteras artificiales, la causa de la justicia. La Ley de la Judicatura evitó cuidadosamente utilizar dicho concepto, sustituyéndolo por el de “competencia”. Dentro de la teoría de un sistema unificado, cualquier parte del sistema tiene jurisdicción para resolver una causa. El volumen de trabajo, no obstante, se distribuye mediante reglas flexibles de competencia. (Enfasis suplido.)(23)
Por otro lado, la Ley de la Judicatura del Estado Libre Asociado de 2003,(24) la cual implementa actualmente las disposiciones del referido Art. V de la Constitución del Estado Libre Asociado de Puerto Rico, dispone lo siguiente:

El Poder Judicial del Estado Libre Asociado de Puerto Rico constituirá un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración. Estará compuesto por el Tribunal Supremo como tribunal de última instancia, el Tribunal de Apelaciones como tribunal intermedio y 
*436
por el Tribunal de Primera Instancia, los que conjuntamente constituirán el Tribunal General de Justicia.

El Estado Libre Asociado de Puerto Rico estará constituido en un solo distrito judicial sobre el cual el Tribunal General de Justicia ejercerá su poder y autoridad. (Enfasis suplido.)(25)
En cuanto al Tribunal de Apelaciones se refiere, dicha ley le otorgó competencia en recursos de certiorari para revisar resoluciones y órdenes del Tribunal de Primera Instancia.(26) Por su parte, la Regla 53.1 de Procedimiento Civil(27) establece que el recurso de certiorari se formaliza mediante su presentación dentro de los 30 días siguientes a la fecha de la notificación de la resolución u orden del foro primario. El referido término es de cumplimiento estricto, prorrogable sólo cuando median circunstancias especiales debidamente sustentadas en la solicitud de certiorari.(28)
En cuanto a su lugar de presentación, la Regla 53.1 de Procedimiento Civil, supra, permite que los recursos de certiorari se presenten tanto en el Tribunal de Apelaciones como en la Secretaría de la sede del Tribunal de Primera Instancia que resolvió la controversia objeto de revisión. Así, la referida regla dispone que en caso de que el recurso se presente en la Secretaría de la sede recurrida del Tribunal de Primera Instancia, el peticionario deberá notificar a la Secretaría del Tribunal de Apelaciones, dentro de las 48 horas siguientes a la presentación inicial del recurso, con el número reglamentario de copias selladas con la fecha y hora de esa presentación inicial.
Por su parte, la Regla 33 del Reglamento Transitorio del Tribunal de Apelaciones de 18 de noviembre de *437 2003,(29) aplicable al presente caso, en armonía con la Regla 53.1 de Procedimiento Civil, supra, permitía que los recursos de certiorari se presentaran tanto en el Tribunal de Apelaciones como en la Secretaría de la sede recurrida del Tribunal de Primera Instancia. Cabe destacar que la nueva Regla 33 del Reglamento del Tribunal de Apelaciones de 2004 se expresa, sobre el particular, en idénticos términos.(30)
Específicamente, a la fecha en que el señor Freire Ayala presentó su recurso de certiorari, la Regla 33 del Reglamento Transitorio del Tribunal de Apelaciones disponía lo siguiente:
De presentarse el recurso de certiorari en la Secretaría de la sede del Tribunal de Primera Instancia en la cual se resolvió la controversia objeto de revisión, la Secretaría del tribunal recurrido retendrá una copia del escrito de certiorari, y la parte peticionaria notificará a la Secretaría del Tribunal de Apelaciones dentro de las cuarenta y ocho (48) horas siguientes a la presentación de la solicitud, el original del escrito con el arancel cancelado y tres (3) copias del mismo debidamente selladas por la Secretaría del tribunal recurrido con la fecha y hora de su presentación. JE1 término aquí dispuesto será de cumplimiento estricto. (Enfasis suplido.)
Es menester señalar que desde la aprobación de la hoy derogada Ley de la Judicatura de 1994,(31) la Legislatura ha tenido la intención y el propósito de facilitar a las partes el acceso a la justicia apelativa, permitiendo que los recursos en alzada para la revisión de sentencias y resoluciones del Tribunal de Primera Instancia se presenten en la Secretaría de la sede del tribunal que resolvió el asunto. Así, bajo el esquema constitucional de un sistema judicial *438 unificado, el legislador le confirió al Tribunal de Primera Instancia, para la presentación de tales recursos, características similares a la Secretaría del Tribunal de Apelaciones.(32) Este principio de mayor acceso a la justicia apelativa fue reafirmado mediante la aprobación de la Ley de la Judicatura de 2003, cuando el legislador dispuso lo siguiente:
El Tribunal de Apelaciones deberá cumplir con el objetivo de este capítulo de dar mayor acceso a la ciudadanía a los procesos judiciales. Deberá ofrecer acceso fácil, económico y efectivo a sus procedimientos, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos. (Énfasis suplido.)(33)
Asimismo, dicho estatuto autorizó al Tribunal Supremo a aprobar un reglamento rector de los procedimientos y la organización del Tribunal de Apelaciones, que contuviera reglas dirigidas a reducir al mínimo el número de recursos desestimados por defectos de forma o de notificación ....(34) Al aprobar en 2003 el Reglamento Transitorio del Tribunal de Apelaciones, dispusimos en su Regla 2 lo siguiente:
[E]ste Reglamento está dirigido a:
(1) Ofrecer acceso fácil, económico y efectivo al Tribunal, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos. (Énfasis suplido.) Reglamento Transitorio del Tribunal de Apelaciones de 18 de noviembre de 2003, pág. 1.
Del mismo modo, establecimos en la Regla 12(A) del referido reglamento lo siguiente:
Las disposiciones sobre los requisitos de notificación a las partes y al Tribunal y los de forma dispuestos en el Reglamento del Tribunal de Apelaciones de 1996, en las Reglas de Procedimiento Civil, Reglas de Procedimiento Criminal para los recursos de apelación, certiorari y de revisión judicial, de *439 berán interpretarse de forma que se reduzcan al mínimo las desestimaciones de los recursos. Por causa debidamente justificada, deberá el Tribunal de Apelaciones proveer oportunidad razonable para la corrección de defectos de forma o de, notificación que no afecten los derechos de las partes. (Énfasis suplido.)(35) Reglamento Transitorio, supra, pág. 17.
Con este amplio marco constitucional y procesal reglamentario en mente, pasamos directamente a responder la interrogante que levantamos al comenzar la discusión de esta segunda parte de la opinión: resolver si el Tribunal de Apelaciones actuó con jurisdicción sobre el recurso de certiorari que ante él presentara el señor Freire Ayala.
En el presente caso, la Sala Superior de la sede de San Juan del Tribunal de Primera Instancia dictó una resolución mediante la cual desestimó sumariamente la reclamación salarial del señor Freire Ayala. El día 30, luego de notificada y archivada en autos la referida resolución, éste presentó en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia un recurso de certiorari. Dentro de las 24 horas siguientes a dicha presentación, el señor Freire Ayala notificó al Tribunal de Apelaciones el original del escrito con el arancel cancelado y sus copias reglamentarias selladas con la fecha y hora de su presentación inicial.
En su resolución, el Tribunal de Apelaciones no discute ni hace alusión alguna a la presentación inicial del recurso de certiorari en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia. No indica si se percató o no de dicha presentación. No surge de su resolución si la tomó o no en consideración. Al resolver la moción de desestimación presentada por Rent a Center, se limitó a expresar que, en interés de la justicia, atendería en los méritos el recurso, ya que la presentación en el Tribunal de Apelaciones un día en exceso del término para hacerlo no había *440 ocasionado un perjuicio indebido a alguna de las partes. Sin embargo, erró al asumir jurisdicción en el recurso bajo ese fundamento. En todo caso, es norma jurisprudencial que un término de cumplimiento estricto sólo puede prorrogarse por justa causa, y únicamente cuando la parte la demuestra en la solicitud de certiorari con explicaciones particulares y concretas.(36)
Por su parte, Rent a Center tampoco discute en su alegato el efecto, si alguno, de la presentación inicial del referido recurso en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia. Más bien, hace abstracción de ésta y plantea que la presentación en el Tribunal de Apelaciones cuando el término de cumplimiento estricto había vencido por un día, en ausencia de acreditación de justa causa, de explicaciones concretas y particulares evidenciadas en el escrito de certiorari, impedía al foro intermedio apelativo asumir jurisdicción sobre el recurso en cuestión.
Concluimos que la presentación de un recurso de certiorari dentro del término de cumplimiento estricto en una sede del Tribunal de Primera Instancia que no es la sede recurrida de dicho tribunal, tiene la misma eficacia jurídica, por virtud del principio constitucional de jurisdicción judicial unificada, que la presentación de éste en la sede recurrida del mencionado tribunal. Veamos.
Es un hecho que el ordenamiento procesal civil apelativo faculta, de forma expresa, a la Secretaría de la sede del Tribunal de Primera Instancia en la cual se resolvió la controversia objeto de revisión para recibir el recurso de certiorari, como lugar alternativo a la Secretaría del Tribunal de Apelaciones. No obstante, el que dicho ordenamiento no le dé facultad expresa para ello a ninguna otra sede del referido tribunal no puede tener el efecto de derrotar el esquema constitucional de un sistema judicial unificado, en cuanto a jurisdicción.
*441 Desde la aprobación de la Constitución del Estado Libre Asociado de Puerto Rico en 1952 y la Ley de la Judicatura de ese mismo año, nuestros tribunales dejaron de funcionar como células u órganos separados e independientes. A partir de ese momento, pasaron a formar una sola organización, un solo conjunto, un tribunal único, bautizado con el nombre de Tribunal General de Justicia, hoy compuesto por el Tribunal Supremo, el Tribunal de Apelaciones y el Tribunal de Primera Instancia. Por tal razón, la presentación inicial de un recurso de certiorari dentro del término de cumplimiento estricto en la Secretaría de una sede del Tribunal de Primera Instancia que no está expresamente facultada a recibirlo por las reglas procesales aplicables, no puede provocar la pérdida del derecho del ciudadano litigante.
Enfatizamos que en el caso ante nos, el recurso se presentó dentro del término de cumplimiento estricto aplicable ante el Tribunal de Primera Instancia, y se notificó al Tribunal de Apelaciones también dentro del término de cumplimiento estricto correspondiente. La novedad del caso estribó en que el recurso no se presentó en la Secretaría de la sede del Tribunal de Primera Instancia que resolvió la controversia objeto de revisión, sino en la Secretaría de otra sede del mismo tribunal. No obstante, y como hemos señalado, ambas Secretarías son componentes inseparables del esquema constitucional de un sistema judicial unificado en cuanto a jurisdicción.
Por lo tanto, determinamos que ante la presentación de un recurso de certiorari en las circunstancias del caso ante nosotros, por imperativo del principio constitucional de jurisdicción judicial unificada, procede lo siguiente: (1) la transferencia administrativa del referido recurso por parte de la Secretaría de la sede del Tribunal de Primera Instancia que lo recibió a la Secretaría de la sede recurrida de dicho tribunal y (2) la notificación por parte del peticionario del original del escrito con el arancel cancelado y sus *442 copias reglamentarias a la Secretaría del Tribunal de Apelaciones, dentro de las 48 horas siguientes, en conformidad con la Regla 53.1 de Procedimiento Civil, supra, y el Reglamento del Tribunal de Apelaciones. Cumplido este trámite, se entiende oportuna y perfeccionada la presentación del recurso.
A la luz de todo lo anterior, resolvemos que la presentación del recurso de certiorari del señor Freire Ayala en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia bajo las circunstancias descritas fue eficaz en derecho. Así las cosas, aunque por el fundamento equivocado, actuó correctamente el Tribunal de Apelaciones al ejercer su jurisdicción sobre éste. En vista de que la revisión se produce contra la resolución recurrida y no contra sus fundamentos, confirmamos al Tribunal de Apelaciones en cuanto al primer señalamiento de error se refiere.(37) Al así resolver, honramos la Constitución del Estado Libre Asociado de Puerto Rico y continuamos fomentando la eliminación de barreras que impiden impartir justicia apelativa, facilitando su acceso en nuestro sistema judicial unificado. Al mismo tiempo, reafirmamos nuestros pronunciamientos a los efectos de que, en lo posible, las controversias judiciales deben resolverse en los méritos.(38)
B. Principio constitucional de administración y funcionamiento judicial unificado; autoridad constitucional para adoptar reglas procesales apelativas y de administración interna
Como mencionamos previamente, la See. 2 del Art. V de nuestra Constitución no sólo concibe nuestro sistema judicial como unificado en cuanto a jurisdicción, sino también en lo concerniente a su funcionamiento y administración.(39) *443 La Comisión de la Rama Judicial de la Convención Constituyente recomendó semejante integración para asegurar el logro de las metas siguientes:
1. La mayor eficiencia en el ejercicio del poder judicial.
2. Una distribución equitativa del trabajo de los tribunales que permita la mayor rapidez en los procedimientos judiciales, evitando la congestión de causas pendientes en los tribunales.
3. Énfasis en el principio de especialización de jueces en lugar de la especialización de tribunales, para evitar así la necesidad de tribunales o salas adicionales, o de crear un número excesivo de plazas de jueces.
4. Reducción del costo por caso al erario.
5. La mayor flexibilidad en la administración de la justicia.(40)
Al tiempo de la aprobación de la Constitución del Estado Libre Asociado de Puerto Rico, se hicieron las expresiones siguientes sobre el alcance de dicha sección:
La sección 2 provee, además [de la eliminación de los problemas técnicos de jurisdicción], que los tribunales constituirán un sistema unificado para propósitos de operación y administración. Estos extremos son implementados por las secciones 6 y 7 discutidas más abajo. (Traducción y énfasis suplidos.)(41)
La See. 6 del Art. V de la Constitución del Estado Libre Asociado de Puerto Rico dispone de la manera siguiente:

See. 6. [Reglas de evidencia y de procedimiento civil y criminal]

El Tribunal Supremo adoptará, para los tribunales, reglas *444 de evidencia y de procedimiento civil y criminal que no menoscaben, amplíen o modifiquen derechos sustantivos de las partes. Las reglas así adoptadas se remitirán a la Asamblea Legislativa al comienzo de su próxima sesión ordinaria y regirán sesenta (60) días después de la terminación de dicha sesión, salvo desaprobación por la Asamblea Legislativa, la cual tendrá facultad, tanto en dicha sesión como posteriormente, para enmendar, derogar o complementar cualquiera de dichas reglas, mediante ley específica a tal efecto. (Énfasis suplido.)(42)
Sobre la referida sección, el Informe de la Comisión de la Rama Judicial de la Convención Constituyente recomendó elevar a categoría constitucional la facultad del Tribunal Supremo para adoptar reglas de procedimiento, haciendo claro que ese poder no conllevaba en forma alguna el de modificar o alterar, en virtud de esas reglas, derechos sustantivos.(43) Respecto a la misma sección se dijo, además:
Esta concesión de poder al Tribunal Supremo para iniciar reglas de procedimiento y evidencia para los tribunales ayuda a implementar la sección 2, que establece un sistema judicial unificado. (Traducción y énfasis suplidos.(44)
Por su parte, la See. 7 del Art. V de la Constitución del Estado Libre Asociado de Puerto Rico dispone:
See. 7. [Reglas de evidencia y de procedimiento civil y criminal]
El Tribunal Supremo adoptará reglas para la administración de los tribunales las que estarán sujetas a las leyes relativas a suministros, personal, asignación y fiscalización de fondos, y a otras leyes aplicables en general al gobierno. El Juez Presidente dirigirá la administración de los tribunales y *445 nombrará a un director administrativo, quien desempeñará su cargo a discreción de dicho magistrado. (Énfasis suplido.)(45)
El Ledo. Ernesto Ramos Antonini, delegado a la Convención Constituyente expresó, como parte del debate de la Convención, que el propósito de la citada See. 7
... es el de que la responsabilidad de la administración de los tribunales de justicia recaiga en el presidente del Tribunal Supremo ....De manera que a quien hay que proteger aquí es, en primer término, al poder judicial, en el sentido de garantizarle eficiencia en su funcionamiento por su administración. (Énfasis suplido.)(46)
Por otro lado, en el Informe de la Comisión de la Rama Judicial de la Convención Constituyente se indicó que se recomendó traspasar al Tribunal Supremo la facultad de administrar los tribunales de justicia de Puerto Rico, pues antes era ejercida por un ente del poder ejecutivo, la Oficina del Procurador General. Entendió la Comisión que la referida See. 7 contenía disposiciones básicas para la consecución de la independencia del Poder Judicial, e hizo constar que el término “administración”, usado en ésta, comprendía, entre otras funciones, la de aprobar reglamentos para la eficiente administración de la Rama Judicial.(47) En ese sentido, la administración centralizada del sistema llevó la idea de la unificación judicial a una forma más efectiva de lo que hasta entonces se había logrado en otras jurisdicciones.(48)
Al amparo de las facultades constitucionales antes discutidas, y como hemos visto, de forma consustancial con el sistema judicial unificado que nos rige, este Tribunal adoptó las vigentes Reglas de Procedimiento Civil de 1979, *446 convertidas en ley por la Asamblea Legislativa. Entre ellas, la Regla 53.1, supra, que según ya analizamos per-mite que los recursos de certiorari se presenten tanto en el Tribunal de Apelaciones como en la Secretaría de la sede del Tribunal de Primera Instancia que resolvió la controversia objeto de revisión. Según señalamos previamente, de acuerdo con la Ley de la Judicatura de 2003 esta Curia promulgó, además, el Reglamento del Tribunal de Apelaciones de 2004.(49) Dicho cuerpo reglamentario complementa la normativa formulada por las reglas de procedimiento respecto a la práctica apelativa ante dicho tribunal, que incluye la tramitación de recursos de certiorari como el de hoy ante nos. Tal y como manifestamos anteriormente, en armonía con la aludida Regla 53.1 de Procedimiento Civil, supra, el referido reglamento permite que los recursos de certiorari se presenten tanto en el Tribunal de Apelaciones como en la Secretaría de la sede recurrida del Tribunal de Primera Instancia.
Para poder encaminar el funcionamiento de nuestro sistema judicial de manera ordenada, y con el fin de evitar socavar su estructura y organización, es imperioso que los procesos judiciales se tramiten con la más absoluta y fiel adherencia a las Reglas de Procedimiento Civil y a los reglamentos de práctica apelativa que hemos cuidadosamente confeccionado. Así las cosas, la opción de presentar el recurso de apelación o certiorari en la Secretaría del Tribunal de Primera Instancia requiere que dicha presentación se haga, según el texto literal de las Reglas de Procedimiento Civil y del Reglamento del Tribunal de Apelaciones de 2004; esto es, en la Secretaría de la sede del Tribunal de Primera Instancia que dictó la sentencia apelada o la resolución recurrida. Esta directriz deberá cumplirse estrictamente.
La decisión a la que llegamos hoy con respecto al re *447 curso de certiorari del señor Freire Ayala, bajo ninguna circunstancia puede ser interpretada como una licencia para que los abogados presenten recursos apelativos en Secretarías de sedes del Tribunal de Primera Instancia sin competencia o sin facultad reglamentaria expresa para recibirlos. Ello provocaría que nuestro sistema judicial sufra una grave dislocación en su organización y funcionamiento, que no habremos de permitir. El abogado del litigante que así actúe, debidamente apercibido está de que su proceder representa un abierto desafío al ordenamiento procesal apelativo que está obligado a obedecer y respetar.
Por lo tanto, el abogado que en el futuro incurra en la conducta aquí desplegada por el representante legal del señor Freire Ayala será sancionado con una cancelación arancelaria adicional de $400, para beneficio de la sede del Tribunal de Primera Instancia donde se presente el recurso. Queremos dejar firmemente establecido que la piedra angular sobre la cual está fundada nuestra facultad reguladora y disciplinaria sobre los abogados y jueces es, precisamente, el principio constitucional de un Sistema Judicial unificado en las áreas de administración y funcionamiento. No podemos perder de perspectiva que el eficiente funcionamiento de nuestro sistema judicial depende, inexorablemente, del íntegro, leal, diligente y responsable desempeño de nuestra clase togada.
III
Mediante los señalamientos de error segundo y tercero, Rent a Center arguye que el Tribunal de Apelaciones erró al revocar la Sentencia Sumaria Parcial(50) emitida por el Tribunal de Primera Instancia. Sostiene que dicho tribunal incidió al concluir que en el caso estaba en controversia si el señor Freire Ayala era onoun empleado exento. Le im *448 puta, además, errar al resolver que el contrato de empleo entre las partes era ambiguo e incapaz de revelar la intención de éstas al contratar. Arguye que el mecanismo de sentencia sumaria parcial era el idóneo para disponer de la reclamación salarial del demandante. Por estar íntimamente relacionados entre sí, discutiremos ambos señalamientos de error conjuntamente.
La sentencia sumaria es el mecanismo procesal que confiere al juzgador discreción para dictar sentencia sin necesidad de celebrar una vista en sus méritos. El tribunal, en el ejercicio de su discreción, puede dictarla cuando de los documentos admisibles en evidencia que se acompañan con la solicitud de sentencia sumaria, o que obran en el expediente del tribunal, surge que no existe una legítima controversia de hechos materiales y esenciales que tenga que ser dirimida en una vista evidenciaría y que sólo resta aplicar el derecho.(51)
De existir controversia real en relación con hechos materiales y esenciales, no debe dictarse una sentencia sumaria y cualquier duda en torno a estos hechos debe resolverse en contra de la parte promovente de la moción, concediendo a la parte promovida el derecho a un juicio en su fondo.(52) En vista de ello, el mecanismo de sentencia sumaria sólo debe utilizarse cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que el promovido no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba.(53) Por otro lado, un tribunal, en el sano ejercicio de su discreción, debe abstenerse de resolver mediante el mecanismo *449 de sentencia sumaria controversias en las que subyacen elementos subjetivos de intención, propósitos mentales o negligencia, y cuando el factor de credibilidad sea esencial.(54)
De otra parte, el derecho de los trabajadores a recibir una compensación extraordinaria por el trabajo realizado en exceso de una jornada de trabajo de ocho horas diarias es, en Puerto Rico, de origen constitucional. La Sec. 16 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico dispone que cuando un trabajador labora por más de ocho horas diarias tiene derecho a recibir una compensación extraordinaria por el tiempo trabajado en exceso de ese límite, “que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley”.(55)
La Ley de Horas y Días de Trabajo de Puerto Rico, Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sees. 271-288, implementa concretamente la referida disposición constitucional. En lo pertinente, dicha ley dispone que ocho horas de labor constituyen la jornada legal diaria de trabajo y añade que cuarenta horas de labor constituyen la jornada legal semanal de trabajo. Establece, además, que son horas extras las trabajadas en exceso de ocho en un periodo de veinticuatro horas. Asimismo, establece que son horas extras las trabajadas en exceso de cuarenta horas a la semana. Por otro lado, la referida ley consagra el derecho a disfrutar de un periodo para tomar alimentos que, como regla general, debe concederse después de concluida la tercera hora de trabajo y antes de comenzar la sexta hora de trabajo consecutivo. Dispone que el patrono que requiera o per *450 mita que un trabajador labore durante horas extras está obligado a pagarle una compensación extraordinaria igual al doble o igual a, por lo menos, tiempo y medio del tipo convenido para las horas regulares, dependiendo de las circunstancias involucradas, según se especifica en su Art. 6 (29 L.P.R.A. sec. 274). También dispone que el patrono que requiera o permita que un trabajador labore durante el periodo destinado para tomar alimentos está obligado a pagarle por dicho periodo o fracción de éste, un tipo de salario igual al doble del tipo convenido para las horas regulares.(56)
Por otro lado, la ley establece que el trabajador que reciba una compensación inferior a la que en ella se fija para las horas extras y el periodo de tomar alimentos, tendrá derecho a recobrar de su patrono, mediante una acción civil, las cantidades no pagadas, más una suma igual en concepto de liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogados del procedimiento. (57)
La Ley Núm. 379, supra, excluyó de sus disposiciones a los ejecutivos, administradores y profesionales, lo que implica que la ley no les cobija,(58) El legislador delegó en la extinta Junta de Salario Mínimo de Puerto Rico la labor de definir quiénes son estos empleados.(59) Mediante la aprobación del Reglamento de la Junta de Salario Mínimo (Reglamento Núm. 13 del Departamento del Trabajo y Recursos Humanos), Reglamento Núm. 4267, Departamento de Estado, Cuarta Revisión, 1990,(60) la referida Junta definió dichos términos. Se trata de los denominados *451 empleados exentos. Es a dicho reglamento al que debemos acudir para determinar si un empleado clasificado por su patrono como “ejecutivo” lo es verdaderamente. De llenar los requisitos que establece el Reglamento Núm. 13, supra, dicho empleado sería exento, carente de derecho a jornadas máximas de labor, a paga por horas extras y al disfrute del periodo de tomar alimentos.(61)
Constituye un principio de nuestra infraestructura jurídica laboral el que solamente por excepción se ex-cluya a un trabajador de la protección que su carácter de empleado le proporciona.(62) Así, para que surja la condición de “ejecutivo” exento es necesario que concurran todos los requisitos que el Reglamento Núm. 13, supra, enumerad.(63)
En su alegato, Rent a Center arguye que no está en *452 controversia que el señor Freire Ayala era un “ejecutivo” exento. Sostiene que el propio señor Freire Ayala admitió su estatus exento en el escrito que presentó en el Tribunal de Primera Instancia en oposición a que se dictara sentencia sumaria. Arguye que éste volvió a admitir su condición de empleado exento en el recurso de certiorari que presentó en el Tribunal de Apelaciones. Ante tales circunstancias, dice no explicarse cómo el foro intermedio apelativo pudo encontrar la existencia de una controversia de hecho material y esencial sobre el particular. Un examen del expediente ante nos revela que Rent a Center tiene razón. Veamos.
En su escrito en oposición a que se dictara sentencia sumaria, el señor Freire Ayala expresó lo siguiente:
7. En relación a la reclamación de horas extras o periodo de tomar alimentos, no hay controversia alguna que las funciones del demandante eran de índole gerencial.
8. Sin embargo, estas funciones estaban reguladas a 46 horas semanales que fue la [sic] que las partes pautaran [sic] en el contrato de trabajo entre las partes. (Enfasis suplido.)(64)
Por otro lado, en el recurso de certiorari que el señor Freire Ayala presentó en el Tribunal de Apelaciones señaló lo siguiente:
... [E]l derecho laboral ha evolucionado y se han creado vía legislación medidas adicionales para proteger a la masa trabajadora, tales como la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, 29 L.P.R.A see. 250; Ley de Horas y Días de Trabajo de Puerto Rico, 29 L.P.R.A. see. 271, Flexitime, 29 L.P.R.A. sec. 282, y otras.
Sin embargo, el asunto a discutirse aquí es uno que tiene que evaluarse a la luz de las disposiciones generales de los contratos que establece el Código Civil de Puerto Rico, 31 L.P.R.A. *453 secs. 3371 et seq. [sic] pues no est[á] en disputa la posición, ni las funciones del cargo, sino la cantidad de horas a que está obligado a trabajar el demandante-peticionario.
Sin embargof,] el Honorable Tribunal de Instancia se limitó a evaluar la clasificación del empleado a base de la definición que ofrece el Reglamento 13 de la Junta de Salario Mínimo, cuando ya el demandante en su deposición había aceptado sus funciones gerenciales. (Enfasis suplido.)(65)
El señor Freire Ayala no cuestionó en su recurso de certiorari ante el Tribunal de Apelaciones la determinación del Tribunal de Primera Instancia que lo declaró “ejecutivo” exento. Unicamente cuestionó la desestimación de su reclamación de “horas extras”,(66) aduciendo que tenía derecho a ellas, al amparo de su contrato individual de trabajo. El señor Freire Ayala en ningún momento se describe en dicho recurso como un empleado no exento. Tampoco argumenta serlo. Por lo tanto, es un hecho no controvertido que el señor Freire Ayala era un “ejecutivo” de Rent a Center, excluido de la aplicación de la Ley Núm. 379, supra.
En vista de que la referida ley es inaplicable a los ejecutivos, es forzoso concluir que el recurrido no tiene derecho por virtud de ley a una jornada máxima de trabajo diaria; tampoco a una jornada máxima de trabajo semanal. Por lo tanto, no tiene derecho bajo la concernida ley a paga por horas extras ni por periodos de tomar alimentos trabajados.
Ahora bien, el señor Freire Ayala invocó ante el Tribunal de Apelaciones la aplicabilidad de su contrato individual de trabajo como fuente de derecho, más allá de las disposiciones de la Ley Núm. 379, supra. Argüyó ante dicho tribunal que la controversia estaba gobernada por el principio de la autonomía de la voluntad contractual. Ante nos, rei *454 tera ese planteamiento y sostiene que bajo dicho principio, Rent a Center pactó con él limitar su jornada de trabajo semanal a cuarenta y seis horas. Alega que pactó lo siguiente: trabajar cuarenta y seis horas semanales como “Junior Assistant Manager” por un salario anual de $19,500. Argumenta que nuestro ordenamiento jurídico, en el campo del derecho laboral, no le impide contratar con su patrono condiciones de trabajo más favorables a las provistas por ley. Afirma que el patrono quebrantó el referido pacto, requiriéndole trabajar, en la práctica, setenta y dos horas semanales.(67) Ante el alegado incumplimiento, reclama como remedio una compensación por las horas trabajadas en exceso de la jornada contractual de trabajo semanal.(68)
Por su parte, Rent a Center sostiene en su alegato que no se comprometió contractualmente con el señor Freire Ayala a una jornada de trabajo semanal exclusivamente de cuarenta y seis horas, sino a una jornada de trabajo semanal “usualmente” de cuarenta y seis horas. Sostiene que el Tribunal de Apelaciones incidió al resolver que el contrato de empleo habido entre las partes era ambiguo y que no revelaba la intención de éstas al suscribirlo. Aduce que, por el contrario, el referido contrato demuestra con claridad que el señor Freire Ayala no tiene derecho a una compensación adicional por las horas trabajadas en exceso de cuarenta y seis a la semana.
Nos preguntamos, ¿constituye un ejercicio válido en derecho el que un empleado exento suscriba un contrato con su patrono que tenga el efecto de limitar su jornada de trabajo semanal a un número determinado de horas? Si lo es, ¿cuál es el derecho aplicable a dicha jornada contractual de trabajo semanal? ¿Qué remedios tiene disponible *455 ese empleado exento ante un incumplimiento patronal con el límite contractual de la jornada de trabajo, en circunstancias en que el contrato guarde silencio en cuanto a dicho extremo? Veamos.
Este Tribunal ha resuelto que la legislación protectora del trabajo cristaliza la política pública del Estado sobre los derechos, los beneficios y las condiciones mínimas de trabajo que han de disfrutar los empleados en Puerto Rico. Hemos establecido que ello no constituye un obstáculo ni menoscaba la oportunidad del empleado de obtener mejores condiciones de trabajo mediante la contratación individual o colectiva.(69) Es norma de derecho que en el ámbito de la contratación laboral lo que no está permitido es que un empleado contrate con su patrono, individual o colectivamente, condiciones de trabajo inferiores a las mínimas establecidas en la legislación protectora del trabajo. Hemos puntualizado que cualquier disposición contractual con tal alcance es nula e ineficaz en derecho por ser contraria a la ley, a la moral y al orden público.(70)
Como antes señalamos, un empleado exento, ex-cluido de las disposiciones de la Ley Núm. 379, supra, no tiene derecho legal a una jornada máxima de trabajo diaria ni semanal. Tampoco tiene derecho legal a una compensación por horas extras. Por ello, su patrono puede requerirle trabajar jornadas en exceso de ocho horas diarias, y en exceso de cuarenta a la semana, sin tener que pagarle compensación adicional a su salario fijo. En consecuencia, cuando un empleado exento logra limitar a un número determinado de horas su jornada de trabajo semanal mediante contratación individual con su patrono, está trascendiendo el ámbito de una ley especial que no le cobija y está obteniendo, a través de un contrato individual de trabajo, la protección que le niega la ley. Por ser cónsono con la *456 política pública del Estado de fomentar que los empleados alcancen más y mejores derechos, beneficios y condiciones de trabajo, mediante contratación individual o colectiva con su patrono, tal contrato es totalmente válido en derecho. En ausencia de ley especial que gobierne los términos específicos de dicho contrato, el derecho aplicable a éste es la doctrina general de las obligaciones y los contratos.
Al adentrarnos en el examen de dicha doctrina, vemos que el Art. 1044 del Código Civil de Puerto Rico dispone que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse de acuerdo con éstos.(71) El Art. 1210 del mismo cuerpo legal establece que desde el momento en que se perfecciona un contrato, éste obliga, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.(72) Asimismo, el Art. 1054 del Código Civil de Puerto Rico dispone que cuando una parte contraviene los términos de un contrato, está sujeta a indemnizar los daños causados.(73) Como norma general, la referida indemnización comprende el valor de la pérdida sufrida y el de la ganancia dejada de obtener por el acreedor.(74) No obstante, la responsabilidad del deudor de buena fe está limitada a los daños y peijuicios previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento.(75) Por otro lado, hemos resuelto que, de ordinario, no procede un reclamo de angustias y daños men- *457 tales en acciones de incumplimiento contractual.(76) Así, para que proceda una acción de daños y pexjuicios contractuales es menester que haya mediado un acuerdo de voluntades generador de una obligación, situación o estado de derecho que haya creado unas expectativas a base de las cuales actuaron las partes. Como norma general, cada parte confía en que la otra cumplirá con lo libremente pactado, conforme al principio de la obligatoriedad de los contratos y de la buena fe. Una acción u omisión negligente o deliberada de una de las partes, que produzca el incumplimiento de la obligación contraída, dará origen a la causa de acción de daños y perjuicios “ex contractu”.(77)
Como antes dispusiéramos, un empleado exento puede adquirir mediante contratación individual con su patrono el derecho a una jornada de trabajo semanal limitada a determinado número de horas. Examinada la normativa pertinente en materia de obligaciones y contratos, concluimos que, ante un incumplimiento patronal con los términos y las condiciones de un contrato de trabajo de esa naturaleza, el empleado perjudicado tiene disponible el remedio de una acción de daños y perjuicios contractuales.(78) Tendría que probar ante el Tribunal de Primera Instancia el incumplimiento del patrono con el contrato y los daños y perjuicios que ha sufrido como consecuencia de éste, según reconocidos por nuestro ordenamiento jurídico.
Un examen del contrato de empleo existente entre el señor Freire Ayala y Rent a Center revela que, en efecto, *458 las partes acordaron una jornada de trabajo semanal limitada. El contrato suscrito por ambas partes en papel timbrado de la compañía leía de la manera siguiente:
RENTER’S CHOICE
Yo, Juan L. Freire Ayala, acepto el empleo que se me est[á] ofreciendo en Renter’s Choice de Puerto Rico, Inc. [Rent a Center], en la posición de Jr. Asst. Mgr., devengando un salario de $19,500 y trabajando 46 horas semanales. Mi horario es rotativo dependiendo de las necesidades de la tienda que se me asigne. De igual manera se me puede transferir de una tienda a otra si así se requiere. Usualmente mi horario será de 46 horas semanales y un promedio de 6 días.
Firmo que he leído esta forma y estoy de acuerdo con la misma. (Enfasis suplido.(79)
• Surge del transcrito contrato que Rent a Center ofreció y el recurrido aceptó ocupar una posición de título gerencial, devengando un salario anual de $19,500, a cambio de que éste brindara a la empresa una jornada de trabajo de cuarenta y seis horas semanales. En la última oración del primer párrafo del contrato se vuelve a hacer alusión a las cuarenta y seis horas de labor semanal, esta vez acompañadas del adverbio “usualmente” y la expresión de que éstas se trabajarían distribuidas en un promedio de seis días.
En su alegato, Rent a Center argumenta que el uso de dicho adverbio en el lenguaje contractual implica que el recurrido, por ser un ejecutivo exento, podía ser requerido de trabajar más de cuarenta y seis horas semanales o me-nos de cuarenta y seis, a cambio de la misma compensación acordada de $19,500 anuales.(80) Arguye que bajo uno u otro escenario no habría violación contractual. En el suyo, el señor Freire Ayala argumenta que, en el mejor de los escenarios para Rent a Center, el señor Freire Ayala debió trabajar comúnmente o habitualmente cuarenta y seis horas semanales, y no continua o frecuentemente setenta y dos horas semanales, como aduce que ocurrió. Sostiene que *459 en ello precisamente estriba el incumplimiento del contrato.
Habiendo una genuina controversia sobre hechos materiales y esenciales, sobre si se incumplió o no el contrato de empleo suscrito por las partes, se hace necesario concederle a éstas la oportunidad de presentar prueba en un juicio plenario. Aunque por razonamientos distintos, coincidimos con el foro intermedio apelativo en que procedía revocar la Sentencia Sumaria Parcial dictada por el Tribunal de Primera Instancia.
IV
Por los fundamentos antes expuestos y, en vista de que la revisión se produce contra la decisión recurrida y no contra sus fundamentos, confirmamos al Tribunal de Apelaciones.(81) Se devuelve el caso a la Sala Superior de la sede de San Juan del Tribunal de Primera Instancia para que continúe con los procedimientos conforme a lo aquí pautado.
El Juez Asociado Señor Rebollo López, aun cuando está conforme con la opinión emitida en el presente caso, no suscribe aquella parte de ésta en que se le impone una sanción arancelaria al abogado que presente su recurso apelativo ante una sede, o sala, del Tribunal de Primera Instancia distinta a la que resolvió el caso; ello porque si dicha presentación es cónsona con el mandato constitucional de un sistema judicial unificado, la imposición de una sanción económica resulta improcedente.

 Apéndice, págs. 109-112.

 Ley Núm. 100 de 30 de jimio de 1959, según enmendada, 29 L.P.R.A. sees. 146-151.

 Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sees. 271-288.

 Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. see. 185 et seq.

 Apéndice, págs. 131-289.

 íd., págs. 294—301.

 íd., pág. 298.

 íd., pág. 295.

 íd.

 Apéndice, págs. 48-63. Fue titulada erróneamente Sentencia Sumaria Parcial. Al no cumplir con las exigencias de la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, constituye, más bien, una resolución.

 Reglamento de la Junta de Salario Mínimo (Reglamento Núm. 13 del Departamento del Trabajo y Recursos Humanos), Reglamento Núm. 4267, Departamento de Estado, Cuarta Revisión, 1990.

 Apéndice, pág. 97.

 Véase Oposición a Petición de certiorari, pág. 6. Véanse, además: Oposición Alegato, pág. 7, de la parte demandante y recurrida; la notificación de la Secretaria General del Tribunal de Primera Instancia, Sala de Ponce de 25 de febrero de 2004; Autos del Tribunal de Apelaciones, caso KLCE-2004-00212.

 Apéndice, págs. 88-96.

 íd., págs. 23-46.

 Carattini v. Collazo Syst. Analysis, Inc., 158 D.P.R. 345 (2003); Vega et al. v. Telefónica, 156 D.P.R. 584 (2002).

 Art. V, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 412.

 4 Diario de Sesiones de la Convención Constituyente 2609-2610 (Edición Conmemorativa 2003).

 Diario de Sesiones, supra, T. 1, pág. 602.

 J. Trías Monge, El Sistema Judicial de Puerto Rico, San Juan, Ed. Universitaria, 1978.

 íd., pág. 177.

 íd., pág. 187.

 íd., pág. 136.

 Ley Núm. 201 de 22 de agosto de 2003, según enmendada, 4 L.P.R.A. see. 24 et seq.

 4 L.P.R.A. sec. 24b.

 4 L.P.R.A. sec. 24(y).

 32 L.P.R.A. Ap. III.

 íd.

 Este era el reglamento vigente a la fecha en que el señor Freire Ayala presentó su recurso de certiorari. Fue derogado el 20 de julio de 2004, mediante la aprobación del nuevo Reglamento del Tribunal de Apelaciones, 4 L.RR.A. Ap. XXII-B.

 4 L.P.R.A. Ap. XXII-B.

 Plan de Reorganización de la Rama Judicial, Ley Núm. 1 de 28 de julio de 1994, según enmendada, 4 L.P.R.A. ant. secs. 22-23n.

 Acevedo Álvarez v. E.L.A., 150 D.P.R. 866 (2000).

 4 L.P.R.A. sec. 24u.

 4 L.P.R.A. sec. 24w.

 gn términos casi idénticos redactamos las Reglas 2 y 12.1 del Reglamento del Tribunal de Apelaciones de 2004, supra.

 Mun. de Carolina v. Reyes et al., 151 D.P.R. 897 (2000); Rojas v. Axtmayer Ent., Inc., 150 D.P.R. 560 (2000); Arriaga v. F.S.E., 145 D.P.R. 122 (1998).

 Pueblo v. Pérez, 159 D.P.R. 554 (2003); Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906 (2001); Pérez Vda. Muñiz v. Criado, 151 D.P.R. 355 (2000).

 Vega v. Caribe G.E., 160 D.P.R. 682 (2003).

 Art. V, Sec. 2, Const. E.L.A., supra.

 Diario de Sesiones, supra, T. 4, pg. 2609.

 Notes and Comments on the Constitution of the Commonwealth of Puerto Rico, Washington D.C., 1953, pg. 88. La cita en idioma inglés lee textualmente: “Section 2 also provides that the courts shall constitute a unified system for purposes of operation and administration. These ends are implemented by sections 6 and 7 discussed below.”

 Art. V, Sec. 6, Const. E.L.A., supra, pág. 414.

 Diario de Sesiones, supra, pg. 2612.

 AToíes & Comments on the Constitution of the Commonwealth of Puerto Rico, op. cit., pág. 91. La cita en idioma inglés lee textualmente: “This grant of power to the Supreme Court to initiate rules of procedure and evidence for the courts helps to implement Section 2 which establishes a unified court system.”

 Art. V, Sec. 7, Const. E.L.A., supra, pág. 416.

 Diario de Sesiones, supra, T. 3, pág. 1667.

 íd., pág. 2613.

 Trías Monge, op. cit., pág. 133.

 Véase nuevamente 4 L.P.R.A. sec. 24w.

 Véase esc. 10.

 Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Rivera Rodríguez v. Rivera Reyes, 168 D.P.R. 193 (2006); Malavé v. Oriental, 167 D.P.R. 593 (2006); García v. Darex P.R., Inc., 148 D.P.R. 364, 382 (1999).

 Bonilla Medina v. P.N.P., 140 D.P.R. 294 (1996); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).

 Rivera v. Rivera, supra; Malavé v. Oriental, supra; Medina v. M.S. & D. Qumica P.R., Inc., 135 D.P.R. 716 (1994).

 Rivera v. Rivera, supra; Rosario v. Nationwide Mutual, 158 D.P.R. 775 (2003); Santiago v. Ríos Alonso, 156 D.P.R. 181 (2002); Soto v. Hotel Caribe Hilton, 137 D.P.R. 294 (1994).

 Art. II, Sec. 16, Const. E.L.A., supra, pág. 352.

 Véanse: Arts. 2, 4, 6, y 15 de la Ley Núm. 379, supra, 29 L.P.R.A. sees. 271, 273, 274 y 283.

 Art. 14 de la Ley Núm. 379, supra, 29 L.P.R.A. see. 282.

 Art. 20 (29 L.P.R.A. sec. 288).

 íd.

 Es inaplicable a los hechos de este caso la Quinta Revisión, que entró en vigor el 17 de febrero de 2006.

 Santiago v. Corco, 114 D.P.R. 267 (1983).

 Sánchez v. Best Price Co., Inc., 102 D.P.R. 379 (1974); López Santos v. Tribunal Superior, 99 D.P.R. 325 (1970).

 A la fecha de los hechos, el Reglamento Núm. 13, supra, págs. 3-4, definía el término “ejecutivo” como sigue:
“Artículo IV Definición de ‘Ejecutivo’
“A los fines de la Sección 30(b) de la Ley de Salario Mínimo de Puerto Rico (Ley 96 de 26 de junio de 1956, enmendada) el término ejecutivo significa:
“A. En todas las actividades excepto Agrícolas
“Cualquier empleado que reúna los siguientes requisitos:
“(a) que tenga por deber primordial la dirección de la empresa en que trabaja o de un usualmente reconocido departamento o subdivisión de la empresa; y
“(b) que usual y regularmente dirija el trabajo de dos o más empleados de la empresa o departamento o subdivisión de la misma; y
“(c) que tenga la autoridad de emplear y despedir empleados, o cuyas sugestiones [sic] o recomendaciones sobre el empleo, despido, mejoramiento, ascenso o cualquier otro cambio en el status de éstos hayan de recibir especial consideración; y
“(d) que usual y regularmente ejerza facultades discrecionales; y
“(e) que no dedique más del 20%, o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40% de las horas trabajadas en una semana de trabajo, a actividades que no estén direct [sic] y estrechamente relacionadas con el desempeño del trabajo descrito en el Apartado A, Inciso (a) hasta (d) inclusive, de este Artículo IV; disponiéndose que este Inciso (e) no será aplicable en el caso de un empleado que esté encargado de una empresa independiente o de una sucursal de la empresa físicamente separada del establecimiento principal de la misma, o de un empleado que sea dueño de por lo menos el 20% del capital de la empresa en la que esté trabajando; y
“(f) que reciba por sus servicios una compensación fija equivalente al sueldo semanal no menor de $200.00, excluyendo alimentos, vivienda u otros servicio;
*452 “(g) también significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a) y (b) de este Artículo IV y que reciba por sus servicios una compensación fija equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295.00) excluyendo alimentos, vivienda u otros servicios.”

 Apéndice, pág. 295.

 íd., págs. 94—95.

 Nótese que el señor Freire Ayala tampoco cuestionó la desestimación de la reclamación de paga por periodos de tomar alimentos trabajados.

 Véase Oposición Alegato, pág. 14, de la parte recurrida. Véase, además, transcripción de la deposición tomada al señor Freire Ayala el 22 de julio de 2003, Apéndice, págs. 219-220.

 Oposición Alegato, pág. 16, de la parte recurrida.

 J.R.T. v. Vigilantes, Inc., 125 D.P.R. 581, 590-592 (1990).

 íd.

 31 L.P.R.A. see. 2994.

 31 L.P.R.A. see. 3375.

 31 L.P.R.A. see. 3018.

 Art. 1059 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3023.

 Art. 1060 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3024.

 Esto a menos que hubieran podido preverse al tiempo de constituirse la obligación y fueran consecuencia necesaria de su falta de cumplimiento. Véase nuevamente el Art. 1060 del Código Civil de Puerto Rico, supra. Además, véanse: Soc. Gananciales v. Vélez & Asoc., 145 D.P.R. 508, 523 (1998); Camacho v. Iglesia Católica, 72 D.P.R. 353, 363 (1951).

 Soc. Gananciales v. Vélez & Asoc., supra, pág. 522.

 El Art. 1077 del Código Civil de Puerto Rico establece el derecho del perjudicado por un incumplimiento de contrato con obligaciones recíprocas a “escoger entre exigir el cumplimiento específico o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos”. 31 L.P.R.A. see. 3052.

 Apéndice, pág. 299.

 Alegato de la parte peticionaria, pág. 33.

 Véase esc. 37.